IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BARRY EMMETT,                      §
TDCJ-CID NO.1383329,               §
          Plaintiff,               §
v.                                 §   CIVIL ACTION NO. H-10-3369
                                   §
CHAPLAIN AFFEY,                    §
          Defendant.               §

MEMORANDUM AND ORDER OF DISMISSAL

Plaintiff, a state inmate proceeding *pro se*, has filed a complaint, an amended complaint, and a more definite statement alleging that he has been denied the right to practice his Native American religion. (Docket Entries No.1, No.11, No.22). For the reasons to follow, the Court will dismiss this case with prejudice.

I. Background

Plaintiff claims that the following events gave rise to the pending complaint: While incarcerated on the Allred Unit in mid-2009, plaintiff, who had changed his religious preference to Native American, attempted to transfer to a TDCJ-CID Native American designated unit. (Docket Entry No.22, page 5). He was informed that he was ineligible for such transfer because he was classified as a G-4 or close custody inmate. (Id.).

In September 2009, plaintiff was transferred to the Ellis I Unit; in January 2010, his classification was elevated to G-2 status, which made him eligible to apply for a transfer. (Id.). Plaintiff claims that for two months he submitted two to three I-60s per week to the Ellis Unit's Chaplain Chris Affey, requesting to be

transferred to a Native American Unit. (<u>Id.</u>). Affey did not respond to any of the I-60s. (<u>Id.</u>). Finally, plaintiff confronted Affey in an Ellis Unit hallway and demanded that he be allowed to take the Native American religious test. (<u>Id.</u>). Affey agreed and ordered the study packet. (<u>Id.</u>, page 6).

In April 2010, Affey gave plaintiff an old, obsolete version of the test. (<u>Id.</u>, pages 6, 8). Two months later, the Region I Chaplaincy Department informed plaintiff of the error and directed him to request to take the test again. (<u>Id.</u>). During this time, plaintiff had been requesting information from Affey by I-60s but Affey had not responded to plaintiff's requests. (<u>Id.</u>). Plaintiff confronted Affey in the hallway about the obsolete test, to which Affey responded, "Yeah, well those mistakes happen sometimes." (<u>Id.</u>).

In mid to late July 2010, plaintiff took the current Native American test. (<u>Id.</u>, page 6, 8). He handed it to Affey within minutes of completing the test. (Docket Entry No.1, page 4). A week later, plaintiff questioned Affey in the hallway about whether he had submitted the test to the Region I Chaplaincy Department. (Docket Entry No.22, page 7). Affey replied that he had not because plaintiff stole the test. (<u>Id.</u>). Plaintiff verbalized his frustration with Affey's actions and demanded that he submit the test to the Chaplaincy Department. (<u>Id.</u>). Affey chuckled and laughed and said, "No, I'm not going to do that; you stole my first one." (<u>Id.</u>).

Based on these facts, plaintiff filed his original complaint, alleging that Chaplain Affey violated his rights to due process, equal protection, and "enjoyment of life," and that Affey engaged in a conspiracy to retaliate. (Docket Entry No.1). Plaintiff sought a $12,500 settlement and an order to transfer him to a Native American Unit with a sweat lodge. (Id.).

In his amended complaint, plaintiff seeks a jury trial, injunctive relief ordering a transfer to a Native American Unit and ordering that inmates classified as G-4s be allowed to attend services like Muslims and Christians. (Docket Entry No.11). He also seeks a "sum certain" of $30,000. (Id.). Plaintiff also amended his claims against Affey to include federal criminal offenses which he frames as "deliberate indifference" to plaintiff's rights under 18 U.S.C. § 241, and criminal conspiracy under 18 U.S.C.§ 371 and 18 U.S.C. § 1519. (Id., page 1).

Plaintiff also amended his complaint to include claims against new defendants, i.e., Rick Thaler, Brad Livingston, and Oliver Bell, all of whom are state prison administrators. (Id.). He complains of their failure to train and supervise capable religious administrators and to promulgate effective religious policies, practices, and procedures. (Id.). He also contends that they have been deliberately indifferent to the inadequate religious policies. (Id.). Plaintiff claims that by the current policy, Native American practitioners are denied equal protection of the law, system-wide due process, and free exercise of religion. (Id.). Plaintiff

3

complains that all Muslim and Christian inmates, regardless of classification, are allowed to practice their religion and attend services on their unit, but a G-4 inmate of Native American orientation cannot fully engage in religious practices because not all units are equipped with a sweat lodge or offer other Native American religious meetings.  (Id.).

Plaintiff further added claims against Ellis I Unit Warden Eileen Kennedy.  (Id., page 2).  Plaintiff contends that she specifically ordered Chaplain Affey to impede plaintiff's religious transfer attempt.  He also complains of her failure to train, supervise, and protect, and alleges that she was deliberately indifferent to the inadequate chaplain and religious policies, practices, and procedures at the Ellis I Unit, and that she knowingly and intentionally violated his civil rights under 18 U.S.C. § 241.  (Id.).

In his More Definite Statement, plaintiff expands his claims against administrators Thaler, Bell, and Livingston to include failure to promulgate effective policy and procedures for staff training and to delegate responsibilities to subordinate administrators.  (Docket Entry No.22).  He complains that Rick Thaler was deliberately indifferent to the ineffective policy and procedure that allowed for G-2 inmates to transfer to a Native American Unit but did not allow a G-4 inmate to transfer.  (Id., page 2).  Plaintiff particularly complains that he is denied access to a sweat lodge and denied access to religious texts, which he

4

claims are available through the Circle or a Native American spiritual advisor. (Id., page 3).

Plaintiff complains that Oliver Bell, as the Executive Director of the Texas Board of Criminal Justice, bears liability because he appointed Brad Livingston as the Executive Director of the Texas Department of Criminal Justice. (Id., page 3). He complains that Livingston is deliberately indifferent to an ineffective policy of staff training and development by failing to ensure that Warden Kennedy was properly trained. (Id., page 4). Plaintiff further complains that Warden Kennedy failed to train Chaplain Affey and that she was deliberately indifferent to Affey's discrimination against anyone who is not a Christian. (Id., page 5). Plaintiff claims that Kennedy was aware of such discrimination because he had written her directly. (Id.).

He complains that Chaplain Affey was deliberately indifferent to his First Amendment rights and denied him equal protection of the law. (Id., pages 5-6).

## II. Standard of Review

Because plaintiff is suing a government official, the district court may scrutinize the basis of his complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a),(b).  In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it.  Haines v. Kerner, 404 U.S. 519 (1972).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact.  Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist."  Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999).  A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 1960 (2007).

### III. Discussion

### A. Monetary Damages

Defendants are entitled to Eleventh Amendment immunity to the extent that plaintiff seeks damages from them for actions taken in their official capacity as state employees.  *See* Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).

Because plaintiff did not sustain a physical injury, he is also barred by the Prison Litigation Reform Act from seeking compensatory

damages for emotional injuries.  *See* <u>Mayfield v. Texas Dep't of Criminal Justice</u>, 529 F.3d 599, 606 (5th Cir. 2008); <u>Geiger v. Jowers</u>, 404 F.3d 371, 375 (5th Cir. 2005).

Plaintiff, however, may be entitled to nominal damages if he has suffered a violation of a constitutional right even if he cannot show any injury.  *See* <u>Carey v. Piphus</u>, 435 U.S.247, 266, 98 S.Ct. 1042, 1053-54 (1978).  For reasons forthcoming, plaintiff is not entitled to nominal damages.

### 1. Defendants Affey and Kennedy

#### a. Equal Protection and Due Process

Plaintiff claims that Chaplain Affey violated his rights to due process, equal protection, and enjoyment of life.  (Docket Entry No.1).  He also claims that Affey discriminated against anyone who was not a Christian.  (Docket Entry No.22).

To state an equal protection claim, the movant must show that defendant treated two or more classifications of similarly situated prisoners differently and that such treatment had no rational relation to any legitimate governmental objective.  <u>Stefanoff v. Hays County</u>, 154 F.3d 523, 526 (5th Cir. 1998).  The movant must also demonstrate that defendant acted with a "discriminatory purpose."  <u>Woods v. Edwards</u>, 51 F.3d 577, 580 (5th Cir. 1995) "[D]isparate impact alone cannot suffice to state an Equal Protection claim; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted."  <u>Johnson</u>

v. Rodriquez, 110 F.3d 299, 306 (5th Cir. 1997). "A constitutional violation may not be established by a reliance upon unsupported assumptions." Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993). Mere conclusory allegations are insufficient to state a claim. Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988).

With respect to Chaplain Affey, plaintiff alleges that Affey was unresponsive to the I-60s plaintiff submitted regarding a transfer to a Native American designated unit, that he administered an obsolete religious examination to plaintiff, and that he refused to send the second examination to state officials for grading because plaintiff stole the test from him. Plaintiff, however, states no facts to show that Affey treated other similarly-situated inmates differently or that he acted with a discriminatory animus toward plaintiff because of his religion. Accordingly, plaintiff's equal protection claim is subject to dismissal as legally frivolous.

To the extent that plaintiff sets forth a substantive due process claim, such claim fully overlaps his equal protection claim. See Lindquist v. City of Pasadena, Tex., 525 F.3d 383, 387 (5th Cir. 2008); see also County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S.Ct. 1708, 1714 (1998) (finding "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims"). Accordingly, plaintiff's substantive due process claim is subject to dismissal.

To the extent that plaintiff claims that Affey violated his right to "enjoyment of life," the Court declines to exercise jurisdiction over this claim. 28 U.S.C. § 1367(c)(3).

### b. Conspiracy to Retaliate

To the extent that plaintiff alleges that Chaplain Affey and Warden Kennedy engaged in a conspiracy to retaliate (Docket Entries No.1, No.11), plaintiff must allege facts showing that Affey and Kennedy had an agreement to retaliate against him because of his religion that resulted in plaintiff's injury. *See* Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982). In his amended complaint, plaintiff claims that Kennedy ordered Affey to impede plaintiff's religious transfer attempt but he states no facts in any of his pleadings to support such a claim. *See* Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (stating that inmate must allege more than his personal belief that he is the victim of retaliation); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1999) (stating that inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred). Plaintiff's chronology of events underlying this complaint do not show that Affey and Kennedy had an agreement to inflict constitutional harm to plaintiff or that Affey's conduct was in any way related to plaintiff's religious preference. Plaintiff's allegation of a civil conspiracy to retaliate, therefore, is subject to dismissal as legally frivolous.

9

### c. Criminal Acts

Plaintiff's allegations that Warden Kennedy and Chaplain Affey were deliberately indifferent to his rights under criminal statute 18 U.S.C. § 241, that Affey engaged in a criminal conspiracy to commit offense or to defraud United States under 18 U.S.C. § 371, and Affey falsified a record in a federal investigation and bankruptcy under 18 U.S.C. § 11519 (Docket Entry No.11) are conclusory. Plaintiff does not allege that Affey or Kennedy have been charged with a federal criminal offense for their alleged conduct and this Court lacks the authority to subject Affey or Kennedy to criminal prosecution. *See* U.S. v. Jones, 287 F.3d 325, 334 (5th Cir. 2002) (observing that the authority to determine whether a person is subject to prosecution for a criminal offense lies solely with state or federal prosecutors). Accordingly, plaintiff's criminal conspiracy claims against Affey and Kennedy are legally frivolous and subject to dismissal.

### d. Free Exercise of Religion

Plaintiff claims that Affey was deliberately indifferent to his First Amendment right because Affey prolonged plaintiff's ability to meet the requirements to transfer to a religious-designated unit. (Docket Entry No.22, page 6). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct.

2800, 2804 (1974); <u>Turner v. Safley</u>, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 2261-62 (1987); <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348-50, 107 S.Ct. 2400, 2404 (1987).

In this case, plaintiff alleges an indirect violation of his right to religious expression.  Plaintiff claims that Affey thwarted his opportunity to be transferred to another unit where he might fully exercise his First Amendment right to religious expression by Affey's violation of TDCJ religious policy and procedure.  *See* <u>Windham v. Pierce</u>, Civil Action No.C-09-0290, 2010 WL 324776 at *2 (S.D. Tex. Jan. 21, 2010) (noting TDCJ requires inmates to pass a religious examination before they can be transferred to a Native American designated prison).  Plaintiff claims that he took the correct test in July 2010, but learned from Affey a week later that Affey did not submit the test to state officials for grading because according to Affey, plaintiff stole the test.  (<u>Id.</u>, page 7).  Plaintiff claims he confronted Affey, by stating, "I don't know what type of games you are playing, but its whatever floats your boat, I guess. . . . Look Chaplain, I need to take my new test again apparently[,] and you need to perform your administrative duties, and then turn the damn test in, it's that simple."  (<u>Id.</u>).  According to plaintiff, Affey responded, "No, I'm not going to do that, you stole my first one."  (<u>Id.</u>).

Affey's failure to follow TDCJ policy to submit the test for grading, however, does not violate the First Amendment.  A violation of mere prison regulations, without more, does not state a

constitutional violation.  *See* <u>Hernandez v. Estelle</u>, 788 F.2d 1154, 1158 (5th Cir. 1986).  An assertion that a prison official failed to follow departmental regulations must, on its own merit, state a constitutional claim.  *See* <u>Balli v. Haynes</u>, 804 F.2d 306, 308 (5th Cir. 1986).  *See also* <u>Levitt v. University of Texas at El Paso</u>, 759 F.2d 1224, 1230 (5th Cir. 1985) (holding that the failure to follow regulations "may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation.").  Instead, Affey's refusal to process the examination disrupted the process whereby plaintiff might have obtained a transfer.  A prisoner, however, has no constitutional right to be confined to a particular facility.  *See* <u>Meachum v. Fano</u>, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538 (1976).

Moreover, Affey's conduct does not show that he denied plaintiff the opportunity to practice his Native American religion or that he permanently barred plaintiff from re-taking the religious test at some later date.  *See e.g.* <u>Wrenc v. Johnson</u>, Civil Action No.V-04-0076, 2006 WL 2092438 (S.D. Tex. July 26, 2006) (noting that "TDCJ-CID does allow all offenders to observe their religious practices in their cells using appropriate material and items").  Instead, plaintiff's pleadings show that plaintiff's conduct may have thwarted his opportunity for a transfer.  Plaintiff does not affirmatively deny Affey's accusation that he stole the new religious test and does not indicate that he attempted to refute

Affey's theft allegation.  Plaintiff simply told Affey that he needed to retake the new test.  When queried by the Court as to why Affey would think that he stole the test, plaintiff stated no facts but replied, "Another fabrication to deny due process to my freedom of religion."  (Docket Entry No.22, page 8).

Broad discretionary authority is afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979 (1974).  To hold that any substantial deprivation imposed by prison authorities triggers constitutional protections would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. Meachum, 427 U.S. at 225, 96 S.Ct. at 2538. (1976).

Plaintiff fails to state facts that would give rise to a cognizable First Amendment claim against Chaplain Affey. Accordingly, plaintiff's First Amendment claim is subject to dismissal.

## 2. Defendants Kennedy, Bell, Thaler, and Livingston

Plaintiff's claims against defendant Kennedy, Bell, Thaler, and Livingston stem from their supervisory positions in the state prison system.  "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional

13

policies that causally result in the constitutional injury." <u>Gates v. Texas Dep't of Prot. & Reg. Servs.</u>, 537 F.3d 404, 435 (5th Cir. 2008). Plaintiff states no facts to show that defendants Kennedy, Bell, Thaler, or Livingston affirmatively participated in any act that deprived plaintiff of any constitutional right.

Plaintiff complains that Bell, Thaler, and Livingston failed to promulgate effective religious policies, practices, and procedures, and that they, along with Warden Kennedy, were deliberately indifferent to the inadequate religious policies. (Docket Entry No.11, pages 1-2). Plaintiff cites to policies 01.01 and 01.03 of the Texas Board of Criminal Justice, which delegates authority to administrators. (Docket Entry No.22, pages 1-4). He also cites to PD-97, which he indicates is an ineffective policy on training and staff development. (<u>Id.</u>, pages 1-5). Plaintiff cites no facts to show that defendants Kennedy, Bell, Thaler, and Livingston violated these policies, that the policies were unconstitutional, or that the implementation of such policies violated his religious rights.

Plaintiff also complains about a policy that requires an inmate to be a classified as G-2 or minimum classification in order to be considered for a transfer to a Native American-designated unit. (<u>Id.</u>, page 2). Plaintiff claims by the current policy that "the Native American religion is denied equal protection of the law, substantive due process and free exercise of religion." (Docket Entry No.11, page 1). Plaintiff claims his equal rights are

14

violated because G-4 Muslims and Christians can practice their religion and attend services as a G-4 system-wide, but he cannot attend Native American weekly meetings or purification rituals, such as those performed in a sweat lodge, without a transfer to a designated unit. (Docket Entries No.11, page 1, No.22, pages 2-3). Moreover, plaintiff complains that this "deliberate indifference to Native Americans' equal protection rights" constitutes criminal conspiracy under 18 U.S.C. § 241. (Docket Entry No.11, page 1).

Prison administrators must provide inmates with "reasonable opportunities . . . to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n. 2., 92 S.Ct. 1079, 1082 (1972) (per curiam). "Under Chaplaincy Manual Policy 9.04, the opportunity to be transferred to a Native American Unit is limited to inmates whose custody levels are G1, G2, and G3." In other words, inmates who pose less of a security risk." Ashley v. Oliver, Civil Action No. 9:10cv133, 2011 WL 4753477 at *1 (E.D. Tex. Oct. 6, 2011). One reason for requiring inmates to meet such custody classifications is the security issues associated with some Native American practices. See Wrenc, 2006 WL 2092438 at *3-4 (noting numerous security and health problems with respect to rituals conducted in the sweat lodge and security issues associated with weekly meetings due to lack of staff and volunteers).

Plaintiff's pleadings, however, do not show that defendants Kennedy, Thaler, Bell, or Livingston promulgated or implemented this

15

religious policy.  *See* Hopson v. TDCJ-CID, Civil Action No.6:09cv0506, 2010 WL 3658374 (E.D. Tex. July 6, 2010) (noting that decisions and policies that resulted in denial of religious services to the Native American inmates originated in the chaplaincy department), *report and recommendation adopted by* 2010 WL 3648143 (E.D. Tex. Sept. 4, 2010).  Nor do his pleadings show that these administrators, by the application of such policies, have denied plaintiff a reasonable opportunity to practice other tenets of his faith in his cell using appropriate materials.

With respect to his Equal Protection claim, plaintiff proffers no facts to suggest that defendants Thaler, Bell, or Livingston acted with discriminatory purpose by the promulgation or implementation of the transfer policy.[1]  *See* Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 862-63 (5th Cir. 2004) (affirming summary judgment dismissal of prisoner's equal protection claim where prisoner "offered little or no evidence that similarly situated faiths [we]re afforded superior treatment, or that TDCJ's policy was the product of purposeful discrimination").  A prisoner must allege either a specific act of discrimination or offer proof of discriminatory intent by prison officials; he may not rest an equal protection claim "on only his personal belief that discrimination played a part" in the complained-of act.  Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

_____

1 Plaintiff's substantive due process claim cannot proceed because it fully overlaps his equal protection claim.  *See* Lindquist v. City of Pasadena, Tex., 525 F.3d 383, 387 (5th Cir. 2008).

Likewise, plaintiff's allegations of a criminal or civil conspiracy are conclusory and therefore, fail to set forth a cognizable claim against defendants Thaler, Bell, or Livingston. *See* <u>Hale v. Harney</u>, 786 F.2d 688, 690 (5th Cir. 1986) (stating that specific facts must be pled when a conspiracy is alleged; mere conclusory allegations will not suffice).

Plaintiff also claims that defendants Kennedy, Bell, Thaler, and Livingston failed to train and supervise capable religious administrators. (Docket Entry No.11, pages 1-2). "A supervisor may . . . be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" <u>Porter v. Epps</u>, 659 F.3d 440, 446 (5th Cir. 2011) (quoting <u>Goodman v. Harris Cnty</u>., 571 F.3d 388, 395 (5th Cir. 2009)). Plaintiff states no facts to support his allegations regarding the training and supervision of a subordinate official by these defendants.

Accordingly, plaintiff's claims against defendants Kennedy, Thaler, Bell, and Livingston are subject to dismissal.

<u>B. Equitable Relief</u>

Plaintiff filed this lawsuit while he was confined at the Ellis Unit in Huntsville. However, plaintiff is no longer incarcerated at that facility but at the Estelle Unit of TDCJ-CID. Plaintiff's

17

transfer to the Estelle Unit renders his claims for declaratory and injunctive relief from Chaplain Affey and Warden Eileen Kennedy moot. Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001); Cooper v. Sheriff, Lubbock County, Texas, 929 F.2d 1078, 1084 (5th Cir. 1991).

In his Motion for a Preliminary Injunction, plaintiff acknowledges that he is legally blind and currently medically unassigned because of his extensive medical problems. (Docket Entry No.31). He states that he is assigned to a medical unit with optometry facilities and an Assisted Disability Services Office ("ADS") on sight. (Id.). He indicates that he needs access to such a unit but wants to be confined on a Native American designated unit. Plaintiff contends that the Stiles Unit provides access to the medical facilities that he requires and is designated as a Native American religious unit. Plaintiff seeks a transfer to such facility. (Id.).

The Estelle Unit, where plaintiff is confined, is the primary facility where blind inmates, like plaintiff, are housed. Wilson v. Texas Dep't of Crim. Justice, Civil Action No.6:11cv245, 2012 WL 4121130 (E.D. Tex. Aug. 16, 2012), report and recommendation adopted by 2012 WL 4121023 (E.D. Tex. Sept. 18, 2012). "The mission of the ADS program is to assist disabled inmates with having access to programs, services and facilities that are available to non-disabled inmates housed in the prison system." Id. "Native American religious services are not conducted at the Estelle Unit." Id.

Although plaintiff indicates that the appropriate religious services are available on the Stiles Unit, public records show that an ADS program is not. <u>TDCJ website.</u>[2] Plaintiff's willingness to forego the ADS program, may enable him to transfer without court order to the Stiles Unit. *See* <u>Wilson</u>, 2012 WL 4121130 slip op. at *1 (inmate may ask TDCJ officials to remove an "ADS hold" from his file so that he could be transferred to a unit where Native American services are conducted). Moreover, as plaintiff has no constitutional right to be housed in a particular prison or custody classification, he is not entitled to have the court enter the order requested. Plaintiff's request for injunctive relief, therefore, is DENIED.

### IV. CONCLUSON

Based on the foregoing, the Court ORDERS that

1.   Plaintiff's Motion for Leave to File Preliminary Injunction (Docket Entry No.31) is DENIED.

2.   This civil rights case is DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §1915A. All claims against all defendants are DENIED.

3.   All other pending motions, if any, are DENIED.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas on *October 26*, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

2 http://www.tdcj.state.tx.us/unit-directory/st.html (viewed October 23, 2012).